UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YAQUB MOHAMMAD SHAIKH,

                                      Petitioner,

-vs-                                                                                               DECISION and ORDER

                                                                                                     20-CV-6300 CJS

WILLIAM BARR, Attorney General,
et al.,

                                      Respondents.
_____

INTRODUCTION

      Yaqub Mohammad Shaikh ("Petitioner"), a native and citizen of India subject to an order of removal, is presently detained at the Buffalo Federal Detention Facility ("BFDF") while he pursues a Petition for Review ("PFR") before the United States Court of Appeals for the Second Circuit ("Second Circuit"). Proceeding *pro se*, Petitioner commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("Section 2241") seeking two forms of relief: First, a "stay of removal"; and, second, an order enjoining his continued detention based upon alleged violations of his rights under the 5th and 8th Amendments to the United States Constitution. On November 27, 2020, Petitioner filed an application (ECF No. 7) for a temporary restraining order ("TRO") enjoining the Attorney General from transferring him from the BFDF to another federal detention center during the pendency of this action. For the reasons discussed below the application for preliminary injunctive relief is denied.

1

BACKGROUND

The following facts are taken from documents filed by the parties to this action in this action and in the action pending before the Second Circuit.[1]

On or about July 2, 1995, Petitioner was admitted to the United States for a period of less than 30 days, pursuant to a visa that expired on July 30, 1995. It is undisputed that Petitioner overstayed that visa and has remained in the United States illegally ever since. On November 29, 2007, the Department of Homeland Security commenced removal proceedings against Petitioner. On November 29, 2010, Petitioner appeared before an immigration judge ("IJ"), admitted the allegations against him and conceded that he was removable.

On May 21, 2013, Petitioner applied for cancellation of removal, but on January 23, 2014 an IJ denied that application and ordered Petitioner removed. Petitioner appealed, but on February 29, 2016, the Board of Immigration Appeals ("BIA") denied the appeal.

On October 10, 2019, Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE"). On October 20, 2019, Petitioner filed a motion with the BIA to reopen his removal proceedings, and for withholding of removal under the Convention Against Torture ("CAT"), alleging that as a Muslim he would be in danger of persecution by the Hindu majority if he is returned to India. However, on March 16, 2020,

---

[1] See, Second Circuit Docket, *Shaikh v. Barr*, 20-1308. The Certified Administrative Record was filed as part of Petitioner's Petition for Review filed with the Second Circuit.

the BIA denied that application.

On April 20, 2020, Petitioner filed his PFR with the Second Circuit, alleging that the BIA violated his due process rights.   The PFR remains pending.

On May 7, 2020, Petitioner filed the subject habeas petition pursuant to 28 U.S.C. § 2241 which, as noted earlier, seeks two forms of relief: First, a "stay of removal"; and, second, an order enjoining his continued detention based upon alleged violations of his rights under the 5th and 8th Amendments to the United States Constitution. With regard to the second type of relief, Petitioner maintains that his detention violates the 5th and 8th Amendments because he has been in custody longer than six months without any showing by the Government (by clear and convincing evidence) that he a flight risk or a danger to the community.

On November 27, 2020, Petitioner filed the subject application for a temporary restraining order ("TRO") enjoining the Attorney General from transferring him from the BFDF to another federal detention center during the pendency of this action.[2]   Petitioner indicates that he filed the application on an "emergency basis" because he "believes" that he will be transferred to another facility outside of the Western District of New York today, November 30, 2020.   Petitioner's belief in this regard is based on the fact that his commissary account at BFDF was closed and he has been given a Covid-19 test, which

---

[2] The application was filed by an attorney who is representing Petitioner in his immigration matters, who indicates that she is not appearing on Petitioner's behalf in this action and that she filed the TRO application on Petitioner's behalf because he did not think that he could bring the matter to the Court's attention in a timely manner.

3

he interprets as signaling that his transfer to a new facility is imminent.

As for why Petitioner maintains that the Court should enjoin a transfer to another facility outside of the Western District of New York, he states in pertinent part:

> [Petitioner] fears that the transfer will result in the dismissal of his habeas corpus petition in this Court.  He is [also] concerned that he [may be] transferred hundreds of miles away from his family and his attorney, making communication and coordination with his family and attorney more difficult.  Mr. Shaikh is concerned that the law could be different in Louisiana and New York where he would be entitled to a bond hearing here in New York State, he won't receive such a bond hearing in Louisiana because that Courts are more conservative.  Mr. Shaikh is concerned that DHS is transferring him from New York State to deprive him of the benefit of a bond hearing he believes he will receive under "*Lora*", a reference to *Lora v. Shanahan*, No. 14-2343 (2d Cir. 2015).  Mr. Shaikh believes that DHS is transferring him and asking for more time to answer because they have no legal basis to continue to hold him without a bond hearing and after transferring him they will move to dismiss his petition based on his transfer and he will have to file a new case after he is at the next detention facility.  Mr. Shaikh is an older gentleman[3]  with some medical conditions and he is afraid he could be subjected to Covid-19 infectious individuals during his transfer or at the new facility.   [Petitioner] knows detainees in Batavia sued to obtain better Covid-19 protection but he is not sure those additional safeguards are in place at the facility he will be transferred to by DHS.

ECF No. 7-1 at pp. 5–6.

On November 29, 2020, Respondent filed a memorandum of law (ECF No. 8) opposing the application.  Respondent indicates that the application should be denied because this Court lacks jurisdiction to review the Attorney General's discretionary

---

[3]  The record indicates that Petitioner is presently 54 years of age.

decisions about where to house detained aliens, and because the Court will retain jurisdiction over the subject habeas petition even if Petitioner is transferred to a detention facility outside of this District.

## DISCUSSION

Petitioner has applied for a TRO and preliminary injunction, and "[i]n the Second Circuit, the standard for issuance of a temporary restraining order ("TRO") is the same as the standard for a preliminary injunction." *Fairfield Cty. Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd as modified sub nom. Fairfield Cty. Med. Ass'n v. United Healthcare of New England, Inc.*, 557 F. App'x 53 (2d Cir. 2014).  "For a preliminary injunction to issue, the movant must establish (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183–84 (2d Cir. 2019) (citation and internal quotation marks omitted).

Here, the Court finds that Petitioner is not entitled to the relief he seeks. In this regard, the Court will assume, for purposes of this ruling, that Petitioner may in fact be facing a transfer to a different detention facility, even though he has offered only his subjective belief in that regard.   The Court does so primarily because Respondent, who is in a position to know whether Petitioner is about to be transferred, has not indicated otherwise.

Nevertheless, the application must be denied. In this regard, the Court notes that another Judge of this district recently denied a similar request, where the detained alien had similarly expressed the unfounded fear that his habeas petition would be dismissed if he were transferred to a detention facility in another judicial district, stating:

> As the Government observes, "[t]he Attorney General is mandated to 'arrange for appropriate places of detention for aliens detained pending removal.'" *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (citing 8 U.S.C. § 1231(g)(1)). "The Attorney General's discretionary power to transfer aliens from one locale to another, as [he or] she deems appropriate, arises from this language." *Id*. (holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a *Bivens* class action suit") (citing *Rios–Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as 8 U.S.C. § 1231(g); *Schweiker v. Chilicky*, 487 U.S. 412, 421, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); footnote and other citation omitted)).
>
> [However,] [r]egardless of the breadth of the Attorney General's authority to decide where [the alien habeas petitioner] is detained, "[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where [th alien] is housed, this Court retains jurisdiction over his habeas petition. *Singh*, 362 F. Supp.3d at 106 (citing *Santillanes*, 754 F.2d at 888). Therefore, "there no need to interfere with DHS's authority to 'arrange for appropriate places of detention' under 8 U.S.C. § 1231(g)(1)." *Id*.

*Dorval v. Barr*, 414 F. Supp. 3d 386, 396 (W.D.N.Y. 2019) (Telesca, J.). Indeed, courts

in this district routinely deny such requests.[4]

Similarly, this Court denies the subject application since it is based primarily on Petitioner's mistaken belief that if he is transferred this action will be dismissed, and/or that he will be subject to less-favorable caselaw outside of the Second Circuit. The additional factors cited by Petitioner, namely, that if transferred he will be farther away from his current family residence, or that he might be exposed to Covid-19, do not warrant the granting of preliminary injunctive relief.

## CONCLUSION

For the reasons discussed above the application for a TRO (ECF No. 7) is denied.

So Ordered.

Dated:   Rochester, New York
         November 30, 2020

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge

---

[4] *See, e.g., Aung v. Barr*, No. 20-CV-681-LJV, 2020 WL 4581465, at *4 (W.D.N.Y. Aug. 10, 2020) ("Aung asks that the Court "order the [r]espondents not to transfer [him] outside the Western District of New York during the pendency of this petition." Docket Item 1 at 10. "It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where DHS may house Aung in the future, this Court retains jurisdiction over his habeas petition. So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1).").